ORDER
PER CURIAM:
The Court granted Mr. Ribaudo’s petition for extraordinary relief in an opinion issued on January 9, 2007. Ribaudo v. Nicholson, 20 Vet.App. 552 (2007) (en banc), appeal filed (Fed.Cir. Apr. 2, 2007) [hereinafter Ribaudo ]. Therein, the Court (1) held unlawful and ordered rescinded the Board of Veterans’ Appeals (Board) Chairman’s Memorandum 01-06-24; and (2) ordered that “[t]he Secretary will proceed to process the appeals that were stayed in accordance with that unlawful memorandum ‘in regular order according to [their] place on the docket’” and will apply this Court’s decision in Haas v. Nicholson, 20 Vet.App. 257 (2006), appeal docketed, No. 07-7037 (Fed.Cir. Nov. 8, 2006) to those appeals. Ribaudo, 20 Vet.App. at 561 (quoting 38 U.S.C. § 7107(a)(1)). The Court also outlined a procedure by which the Secretary could file a motion to stay the precedential effect of Haas. Id. at 560-61.
On January 16, 2007, the Secretary filed an opposed motion requesting that the Court (1) stay the precedential effect of Haas pending judicial resolution in Haas, (2) stay the adjudication of cases potentially affected by Haas, (3) rule expeditiously on the motion to stay, and (4) delay entering judgment in Ribaudo until the motion to stay has been ruled upon. On January 24, 2007, the petitioner filed a motion to dismiss the Secretary’s motion on the basis that it must be filed not in this case, but in Haas. Separately, the petitioner also has filed an opposed motion for the Court to order the Secretary to show cause why he should not be held in contempt for violating our January 9, 2007, order granting the petition for extraordinary relief.
On January 26, 2007, the Court issued an order, staying until further order of the Court, adjudication before the Board and VA regional offices cases that are potentially affected by Haas. On January 31, 2007, the Court entered judgment and noted the entry of judgment did not affect the January 26, 2007, order.
I. PROCEDURE AND JURISDICTION
Initially, the Court recognizes that the Secretary’s motion to stay the precedential effect of Haas includes both a confession that he is unsure whether he has selected the appropriate procedural avenue for this motion and an invitation for the Court to construe his motion as appropriate to present the merits of his stay request. The petitioner, on the other hand, argues that *139 Rule 8(a) of the Federal Rules of Appellate Procedure requires us to dismiss the Secretary’s stay motion. See Fed. R.App. P. 8(a). In our decision in Ribaudo, we set forth, for the first time, the particular procedure to be used by a party seeking to stay the effect of one of our decisions. See Ribaudo, 20 Vet.App. at 560 (“[W]e will adopt the principle that underlies Rule 8(a) of the Federal Rules of Appellate Procedure and the adaptation of that rule by Federal Circuit Rule 8(a), namely ‘that the immediately subordinate tribunal has jurisdiction to act on a motion for a stay’ even in a case where a Notice of Appeal has been filed seeking review in the [U.S. Court of Appeals for the] Federal Circuit [(Federal Circuit)].” (quoting In re Bailey, 11 Vet.App. 848, 349 (1998) (Nebeker, J., dissenting))). We then concluded that, “if the Secretary or Board Chairman wishes to stay the effect of Haas, the Secretary must file with this Court, or the Federal Circuit, a motion to stay the effect of this Court’s decision in that case.” Id.
Because the procedures adopted in Ribaudo postdate our opinion in Haas, and because the parties deserve a swift resolution of the motion to stay, we will decide the motion in Ribaudo rather than foster unnecessary delay by dismissing the motion and requiring the Secretary to refile his motion in Haas. In the future, however, a party seeking to stay the effect of one of our decisions must file a motion to stay in the case the effect of which the party wishes to stay. Permitting a party to file a stay motion in a case other than the one to which the motion pertains is not in keeping with the general principles underlying Rule 8(a) of the Federal Rules of Appellate Procedure and could invite uncertainty and procedural chaos. Thus, although we will deny the petitioner’s motion to dismiss the Secretary’s motion in this case, we again stress that this is a onetime exception to our newly adopted procedure requiring that a motion to stay the precedential effect of a particular case be filed in that case.
Although one of our dissenting colleagues would hold that the Court has jurisdiction over the Secretary’s stay motion only if it is filed under the Haas docket number, that view unduly limits the Court’s jurisdictional breadth in this matter. While we agree that the Court would have jurisdiction to consider such a motion in Haas, it does not follow that Haas is the only case in which the stay motion may be heard. Constitutionally, the propriety of the stay is a live case or controversy between the Secretary and Mr. Ribaudo that relates to the relief requested by Mr. Ri-baudo’s petition. See Ramsey v. Nicholson, 20 Vet.App. 223, 224 (2006) (per cu-riam order) (dismissing petition as moot because petitioners had obtained relief sought, i.e., the Secretary rescinded Board’s stay order and directed Board to resume adjudication of stayed claims); Waterhouse v. Principi, 3 Vet.App. 473, 475 (1992) (holding that parties before Court must “personally have suffered some actual or threatened injury as a result of the putative illegal conduct” (quoting Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982))); Mokal v. Derwinski, 1 Vet.App. 12, 15 (1990) (adoption of Article III case-or-controversy jurisdictional requirements). Statutorily as to subject matter, there is no dispute that our jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a), extends to the relief requested by Mr. Ribaudo. See Ramsey, 20 Vet.App. 16, 21 (2006) (citing In re Fee Agreement of Cox, 10 Vet.App. 361, 371 (1997)). Statutorily as to forum, we clearly indicated in our decision granting Mr. Ribaudo’s petition that we retain jurisdiction over the *140 enforcement of our decisions even after we no longer have jurisdiction over the merits of a case because it has been appealed to the Federal Circuit. Ribaudo, 20 Vet.App. at 560; see also Heckler v. Lopez, 463 U.S. 1328, 104 S.Ct. 10, 77 L.Ed.2d 1431 (1983) (Rehnquist, J., acting as Circuit Justice); JWK Intern. Corp. v. United States, 49 Fed.Cl. 364, 370 (2001), aff'd, 279 F.3d 985 (Fed.Cir.2002). Any panel opinion by this Court suggesting otherwise is hereby overruled. See, e.g., In re Bailey, supra (holding that filing of appeal to Federal Circuit divests this Court of jurisdiction to consider motion to stay Court order pending appeal).
Accordingly, the Court holds that there is jurisdiction to decide the motion in the instant case. As detailed above, there are prudential concerns that would normally compel us to decline ruling on a stay motion outside the case whose precedential effect the motion seeks to stay. Nonetheless, under the unique circumstances presented — the need to resolve this motion promptly combined with the Court’s not having yet adopted a Rule of Practice and Procedure to guide practitioners in filing such motions — we conclude that the normal prudential concerns are outweighed by the circumstances in this case. In addition and significantly, action on the stay motion here is being taking by a full-Court panel. Cf. Bethea v. Derwinski, 2 Vet.App. 252, 254 (1992) (noting that where there is an earlier three-judge panel opinion, in a subsequent case, a three-judge panel may not render a decision that conflicts materially with such earlier panel).
II. THE SECRETARY’S REQUEST TO STAY
Turning to the merits of the Secretary’s motion, in Ribaudo we stated:
Whether such a motion [to stay the effect of a decision] is granted is entirely within this Court’s discretion, and, in exercising that discretion, this Court will look to the following four criteria generally considered relevant in determining whether to stay the effect of a court decision pending appeal: (1) The likelihood of success on the merits of the moving party’s appeal; (2) whether the moving party will suffer irreparable harm in the absence of a stay; (3) the impact on the non-moving party of that stay; and (4) the public interest. See Ramsey, 20 Vet.App. at 39 (citing Standard Havens Prods., Inc. v. Gencor Indus., Inc., 897 F.2d 511, 512 (Fed.Cir.1990)). To be clear, the Court’s grant of a stay of the effect of one of its decisions could include directing or authorizing the Secretary and Board Chairman to stay cases at the Board and at the agencies of original jurisdiction. See Nat’l Org. of Veterans Advocates v. Sec’y of Veterans Affairs, 260 F.3d 1365, 1380 (Fed.Cir.2001) (directing VA “to stay all proceedings involving claims for [dependency and indemnity compensation] benefits under [38 U.S.C. § ] 1318, whose outcome is dependent on the regulation in question, pending the conclusion of an expedited rulemaking”).
20 Vet.App. at 560. As the moving party, the Secretary has the burden of demonstrating that the factors weigh in favor of granting his requested stay. The weighing of the factors is not a mathematical exercise. See Hilton v. Braunskill, 481 U.S. 770, 777, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987) (“Since the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules.”); Standard Havens Prods., Inc., 897 F.2d at 512 (“Each factor ... need not be given equal weight.”). Ultimately, whether a stay is appropriate depends on the totality of the circumstances. Therefore, the above *141 framework should not be regarded as inflexible or exclusive. Also, whether the stay is granted or not rests entirely within our discretion. Id. To determine how to exercise that discretion, we now address the four factors under the circumstances presented in the instant motion.
Initially, the Court observes that the framework we borrow from Rule 8(a) of the Federal Rules of Appellate Procedure is not articulated so as to be directly applied to veterans benefits claims. The Court will first discuss in general terms how each factor pertains to appeals of veterans benefits claims. See Standard Havens Prods., Inc. and Ribaudo, both swpra. Then we will discuss how each factor applies to this particular case.
A. Likelihood of Success on the Merits of the Appeal
The likelihood of success on the merits of the moving party’s appeal is not a rigid concept. Hilton, 481 U.S. at 777, 107 S.Ct. 2113. The determination of success does not depend on a showing of a mathematical probability of success, but rather on whether there is “substantial equity, and [a] need for judicial protection,” such that “an order maintaining the status quo is appropriate.” Wash. Metro. Area Transit Comm’n, 559 F.2d 841, 844 (D.C.Cir.1977). To satisfy this requirement, the party seeking to maintain the status quo through a stay need only raise questions on the merits that are “so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation.” Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2nd Cir.1953).
The Court recognizes that “[wjhenever decisions of one court are reviewed by another, a percentage of them are reversed.” Brown v. Allen, 344 U.S. 443, 540, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (Jackson, J., concurring) (maintaining that “[w]e are not final because we are infallible, but we are infallible only because we are final”). To determine the likelihood that any ruling of law will survive appeal, the best objective test is the degree to which it is rooted in well-established law. Where the decision of a court takes only a small incremental step from established law or relies on a strong analogy to clear precedent, then there is reason to believe that reversal is unlikely. Conversely, delving into an area with little precedent increases the chances of a different ruling on appeal. Another objective factor to consider is the number of rulings involved in reaching the final conclusion. As the number of rulings increases, the likelihood that the final conclusion will be modified or reversed on appeal necessarily increases. Additionally, because the Federal Circuit’s jurisdiction is limited to review of our interpretations of law and regulation, the focus is not on the specific facts of the case to be stayed. See 38 U.S.C. § 7292; Forshey v. Principi 284 F.3d 1335, 1359 (Fed.Cir.2002) (en banc); Prenzler v. Derwinski 928 F.2d 392, 393 (Fed.Cir.1991) (recognizing that the Federal Circuit’s review of our statutory and regulatory interpretation will be conducted de novo). Simply put, because the Federal Circuit can review only our legal determinations, its review will always be de novo.
The issue decided in Haas was one of first impression. Reaching a decision required the Court to interpret three layers of authority: A statute, its implementing regulation, and the relevant provisions of VA Adjudication Procedure Manual M21-1. Haas, 20 Vet.App. at 277. None of the layers of authority have been addressed extensively by prior caselaw. Therefore, based on the number and novelty of the issues in its decision subject to de novo review by the Federal Circuit, Haas *142 presents several substantial, novel issues that may result in the Federal Circuit modifying or reversing our decision. See Standard Havens Prods., Inc., 897 F.2d at 516 (granting stay pending resolution of appeal in part based upon the appellant’s showing of a “substantial legal question”). Indeed, these circumstances present fair ground for litigation and thus produce a good reason for maintaining the status quo pending further deliberate review. See id. at 513-14; see also Alaska Cent. Express, Inc. v. United States, 51 Fed.Cl. 227 (2001) (if equities weigh heavily in favor of maintaining status quo, court may grant injunction where question raised is novel or close); Golden Eagle Ref. Co. v. United States, 4 Cl.Ct. 622 (1984) (same). Thus, the Court in its discretion holds that the Secretary has met his burden of demonstrating that the first factor weighs in his favor.
B. Irreparable Harm
On the second factor, “whether the moving party will suffer irreparable harm in the absence of a stay,” the potential Board decisions before the Court deal primarily with paying disability compensation and providing other VA benefits. Therefore, it is difficult to discern whether the Secretary will ever suffer “irreparable” harm from being denied a stay of a decision of this Court. See 38 U.S.C. §§ 301(b), 7261; Tobler v. Derwinski, 2 Vet.App. 8, 11-12 (1991). The Court must consider, however, the generally overburdened VA system and any additional burdens imposed on this complex system by requiring the Secretary to adjudicate cases affected by Haas while that decision is still on appeal. First, although the Secretary has the power to rescind or discontinue awarded benefits and, under certain circumstances, to recover money already disbursed, see 38 U.S.C. §§ 5302, 5314, 5112(b)(6), the time spent on making these decisions, and then revoking benefits awarded and initiating recovery of payments, can never be reclaimed by the Secretary if a legal interpretation by this Court is later reversed.[1] Cf. Adams v. Freedom Forge Corp., 204 F.3d 475, 484-85 (3rd Cir.2000) (“The irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages.”).
Second, occasionally a decision of this Court may invalidate the procedures used by the Secretary in a manner that would require a serious restructuring of the VA workforce. See, e.g., Colvin v. Derwinski, 1 Vet.App. 171 (1991) (holding that Board panels may consider only independent medical evidence to support their findings, resulting in VA altering its long-standing practice of including members of the Board with medical expertise on each panel and relying on their medical opinion in rendering Board decisions). For a case on appeal to the Federal Circuit, it may be prudent to stay the precedential effect of our opinion in that case to avoid a time-consuming, traumatic, and potentially unnecessary reorganization of adjudication personnel.
Third, to the extent our rulings affect the Secretary’s dealings with groups beyond his control (such as independent entities that provide specific services to veterans, or private parties that might possess relevant records), the Court should consider the potential for unnecessarily straining the limited .resources of these organizations. Time spent on these appeals, if they need to be readjudicated following the Federal Circuit’s decision in Haas, is *143 critical time that cannot be recouped by these supporting organizations. Rather, denying the Secretary’s motion for a stay would result in consuming and expending even more time and resources in a system where time is very much of the essence for each claimant, not just those individuals potentially affected by our decision in Haas. Hence, the Court cannot be completely insensitive to the potential for administrative disruption that exists when it denies a stay motion. Of course, a Court decision may affect the Secretary in other ways and we have no doubt that he -will be motivated to fully inform us of the potential effects of denying a stay in any given case so that we can weigh the potential effect as appropriate. In sum, we conclude that a denial of a stay would result in some harm to the Secretary by the likely creation of administrative disruption in an already generally overburdened system.
C. Impact on Nonmoving Party
The impact on the nonmoving party before VA, which here includes Mr. Ribaudo, must be judged by the group that is defined by the law being interpreted. Although the legal questions involved in resolving a petition for extraordinary relief may require examining a petitioner’s individual circumstances, see Erspamer v. Derwinski, 1 Vet.App. 3, 10-11 (1990), the legal question of whether a stay is appropriate is a different and broader inquiry. It is not a challenge to opponents of the stay to select the most critically ill and sympathetic claimants seeking the particular type of benefit at issue. Thus, the Court should examine whether the class of benefits involved necessarily corresponds to a class of claimant whose needs are unique or particularly time sensitive.
In this case, the group of third-party claimants affected by the stay are those who have conditions presumptively related to exposure to Agent Orange who would not be entitled to that presumption if Haas were to be reversed or significantly modified. The list of such conditions includes not only common conditions such as type II diabetes, but also numerous forms of cancer and other critical conditions. 38 C.F.R. § 3.309(e) (2006). Because veterans’ claims die with them, some claimants affected by staying Haas would qualify as having especially time-sensitive claims. See Landicho v. Brown, 7 Vet.App. 42, 47 (1994). Therefore, the delay suffered by these claimants is consequential and must be afforded weight in the consideration of the stay factors.
D. Public Interest
Considering the fourth factor, the members of the public that are particularly interested in the outcome of the type of stay motions presented here are the millions of current and potential veterans benefits claimants. The primary effect of not granting a stay is incursion of the risk that processing claims while the lead case is on appeal will result in a waste of resources that further burdens the veterans benefits system. In exercising our authority under the All Writs Act, 28 U.S.C. § 1651(a), to insure that the Board adjudicates claims in a timely manner, we only exercise such power where “the delay amounts to an arbitrary refusal to act, and [is] not the product of a burdened system.” Costanza v. West, 12 Vet.App. 133, 134 (1999) (per curiam order). Thus, this group has no effective remedy from the Court if denying a stay results in a further burden on VA’s adjudication system. Moreover, the Court notes that our obligation to consider the effect of our rulings on the system exists throughout our jurisprudence. See, e.g., Mason v. Nicholson, 20 Vet.App. 279, 289 (2006) (refusing to order a remand that would be “a superfluous exercise adding to an already overburdened system”). Accordingly, the more *144 limited the resources that may be consumed by VA’s adjudication of a large number of claims that may later have to be readjudicated after a judicial decision, the more caution the Court should exercise in refusing the Secretary permission to stay those cases.
There can be extensive delay in obtaining a final appellate decision. The veterans benefits system is unusual, if not unique, in the degree of administrative claims adjudication and judicial review of those adjudications. In addition to the multiple layers of VA decision review, veterans have two separate layers of appeal of right to independent judicial review. Beyond the plenary appellate review of this Court, 38 U.S.C. § 7261, the appellant has a second appeal of right to the Federal Circuit and then can seek further review by the U.S. Supreme Court. 38 U.S.C. § 7292. However, because of the limited nature of the Federal Circuit’s review of our decisions, there is no guarantee that the appeal of the stayed decision will result in a definitive resolution of the Secretary’s dispute with our legal interpretation. The Federal Circuit may vacate and remand one portion of our decision for further proceedings without comment on the whole. See, e.g., Mayfield v. Nicholson, 444 F.3d 1328 (Fed.Cir.2006). This can lead to one of the Court’s decisions being appealed to the Federal Circuit multiple times over many years before an issue is resolved. Moreover, because the Federal Circuit’s jurisdiction extends to arguments “in which the [Court’s] decision ... regarding a governing rule of law would have been altered by adopting the position being urged ... even though the issue underlying the stated position was not ‘relied on’ by the ... Court,” it is quite possible that the Federal Circuit will not address any of the interpretations by this Court challenged by the Secretary in his appeal. Morgan v. Principi, 327 F.3d 1357, 1363 (Fed.Cir.2003). Because it is possible that an interpretation of law by this Court may be the subject of litigation for years, denying a stay of one of our decisions may result in the need to readju-dicate hundreds, if not thousands, of claims by the time the correctness of the ruling is finally addressed by the Federal Circuit or the U.S. Supreme Court. There is no question that the readjudication of such a number of cases and any subsequent effort to recover benefits paid pursuant to them would result in a significant burden on a system that is already handling close to a million new claims for benefits each year.
It is not disputed that the Court’s ruling in Haas could possibly extend the presumption of herbicide exposure to 832,000 veterans not previously entitled to the presumption. Secretary’s Motion at 10. This number is almost the total number of compensation claims filed last year. Id. Undoubtedly, it affects more than 1,500 claims currently pending at the Board.[2] Accordingly, even if only a modest percentage of those veterans affected by Haas filed claims based on that decision, the number of existing and potential claims is significant and could result in a substantial burden on the system, in terms of development, adjudication, and readjudi-cation if such claims had to be readjudicat-ed some months or years in the future. Hence, if Haas were to be modified or reversed, the consequences would certainly be felt not just by those whose benefits were discontinued but by millions of veter *145 ans and dependants who must contend with the delays caused by the limited resources available to the Secretary.
E. Totality of the Circumstances
Examining the circumstances surrounding these four factors as a whole, we find that the Secretary has met his burden of demonstrating that the effect of our decision in Haas should be stayed. Although the second and third factors weigh, at least to some degree, against granting the motion, the first and fourth factors together outweigh the other factors under the facts of this case. The Court recognizes the disadvantage that may be experienced by claimants whose benefits could be awarded now by denying the Secretary’s stay motion and ordering him to adjudicate those claims and apply Haas. However, in a world of limited resources and uncertainty in the appeals process, the Court must accept its role in balancing competing interests where it is not always possible to process some veterans’ claims without prejudicing the interests of other veterans. Therefore, our temporary stay issued on January 26, 2007, will be dissolved and the Secretary’s motion will be granted in part.
In light of the critical nature of some of the disabilities involved, and the fact that some claimants may not survive the duration of this stay, the Court qualifies the stay in that it does not affect in any way the Secretary’s ability to advance cases on the docket of the Board based on the compelling facts of an individual case. 38 U.S.C. § 7107(a)(2); 38 C.F.R. § 20.900(c) (noting that a case may be advanced on the Board’s docket if “the appellant is seriously ill or is under severe financial hardship, or if other sufficient cause is shorn ” (emphasis added)). Individual claimants may still apply to the Board to have their cases advanced, as an exception to the stay granted by the Court. In ruling on any motions for advancement on the docket, the Secretary will, of course, act expeditiously, and if the Secretary does advance such cases, they will no longer be subject to the stay granted in this order. In adjudicating those cases, the Secretary must apply our opinion in Haas. This statutory right ensures, as recognized by our dissenting colleague, that “the adjudication of the most serious cases (such as those involving veterans with serious health or financial issues) can be expedited,” post at 151-52, and such right, therefore, addresses the concern as to the potential irreparable harm to those nonmoving third-party claimants who are similarly situated to Mr. Ribaudo with appeals pending before the Board and who may have serious, life-threatening conditions. Moreover, the Secretary’s authority to order equitable relief in appropriate cases is also unaffected and, therefore, provides yet another alternative remedy. See Erspamer, 9 Vet.App. at 511-12 (Court’s authority does not extend to reviewing Secretary’s exercise of his equitable powers). As a final matter, the stay does not apply to cases where the Court has already issued a decision ordering VA to apply Haas and the Secretary did not appeal that decision to the Federal Circuit. See Winslow v. Brown, 8 Vet.App. 469, 472 (1996) (“A lower tribunal, ‘upon receiving the mandate of an appellate court, may not alter, amend, or examine the mandate, or give any further relief or review, but must enter an order in strict compliance with the mandate’ ”) (quoting Piambino v. Bailey, 757 F.2d 1112, 1119— 20 (11th Cir.1985)); Moore v. Derwinski, 2 Vet.App. 67, 68 (1992) (ordering the Secretary to show cause why he should not be held in contempt for failure to comply with the mandate of the Court).
III. THE PETITIONER’S CONTEMPT MOTIONS
The petitioner has filed a motion for an order that the Secretary show cause why *146 he should not be held in contempt. See 38 U.S.C. § 7265 (explicitly granting the Court power to enforce its lawful orders through enumerated contempt powers). The Court has recognized that “ ‘[b]ecause of their very potency, [contempt] powers must be exercised with restraint and discretion.’ ” Jones v. Derwinski, 1 Vet.App. 596, 607 (1991) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). Hence, “a court considering sanctions ... must take care to determine that the conduct at issue actually abused the judicial process.” Jones, 1 Vet.App. at 607.
As a result of its holdings in Ribaudo, the Court issued two orders: (1) the Secretary was ordered to rescind Board Chairman’s Memorandum 01-06-24, and (2) the Secretary “will decide Mr. Ribau-do’s appeal in regular order according to its place upon the docket and will apply this Court’s decision in Haas.” Ribaudo, 20 Vet.App. at 561 (internal citations omitted). Concerning our first order, at the present time, there is no evidence to suggest that Board Chairman’s Memorandum 01-06-24 has not been rescinded. Regarding our second order, because we subsequently granted the Secretary a preliminary stay as to that order, he cannot be in contempt of Court as to that particular order.
In support of the contempt motion, the petitioner attaches what he asserts are two electronic mail messages from the Secretary’s Chief Counsel for Policy to the Board and its supporting staff ordering the Board not to process cases that had been stayed pursuant to the Chairman’s Memorandum that was invalidated by our January 9, 2007, order granting Mr. Ri-baudo’s petition. These messages appear to have been during the two days immediately following our January 9, 2007 order. Their preliminary condition is clear. See Show Cause Motion, Exhibit A at 1 (“We are consulting with the General Counsel’s Office regarding what actions will be taken in light of this significant decision.... Further information and guidance will be provided shortly.”); Show Cause Motion, Exhibit B at 1-2 (“In the meantime, we at the Board continue to sit tight today and tomorrow while the Court and litigation process works itself out. This action is in no way intended to be disrespectful as to the lawful orders of the Court, but rather is intended to follow the specific process for obtaining a stay set forth by the Court in Ribaudo.”). Rather than demonstrate contempt for the Court, these preliminary internal VA communications reflect an ongoing effort by the Secretary to comply with our opinion in Ribaudo.
Moreover, as noted above, we subsequently granted the Secretary a preliminary stay with respect to the second holding in Ribaudo, and, with respect to the first holding in Ribaudo, we have nothing before us to suggest that Board Chairman’s Memorandum 01-06-24 has not been rescinded. Although we would be concerned if our orders were not complied with, in the end, the petitioner has done a disservice to the Court by filing a contempt motion so quickly, particularly when, as is the case here, it is clear that the Secretary is engaged in an ongoing effort to comply with our decision in Ri-baudo. Accordingly, even assuming the authenticity of the alleged internal VA electronic mail messages, there is no merit in the petitioner’s request for a show cause order.
Upon consideration of the foregoing, it is
ORDERED that the petitioner’s motion to dismiss the Secretary’s stay motion is denied. It is further
ORDERED that the January 26, 2007, temporary stay is dissolved. The Secretary’s January 16, 2007, motion to stay is *147 granted in part. The adjudication of cases before the Board and VA regional offices that are potentially affected by Haas is stayed until mandate issues in the pending appeal of Haas to the Federal Circuit. The Secretary, however, may, upon the motion of an appellant, advance for consideration and determination compelling cases on the Board’s docket as of the date of this order, see 38 U.S.C. § 7107(a)(2), to which our decision in Haas will apply. Moreover, the Secretary’s authority to order equitable relief in appropriate cases is also unaffected. It is further
ORDERED that the Secretary, upon issuance of mandate by the Federal Circuit in Haas, will proceed to process the claims that were stayed pursuant to this order, unless ordered otherwise. It is further
ORDERED that the petitioner’s motion for an order that the Secretary show cause why he should not be held in contempt is denied.

. The Court expresses no opinion in this decision as to whether the Secretary would in fact be able to recoup any benefits awarded pursuant to Haas, if Haas is reversed.

. During oral argument on December 6, 2006, when asked how many cases were being stayed pending the appeal of Haas, the Secretary's representative reported that more than 1,500 appeals were being stayed pursuant to Board Chairman’s Memorandum 01-06-24.