# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 09-3233

MICHELE D. BURDEN, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued October 26, 2011                              Decided  February 1, 2012)

*Angela J. Hill*, of Alexander City, Alabama, for the appellant.

*Karen Hartridge*, with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Carolyn F. Washington*, Deputy Assistant General Counsel, were on the brief, all from Washington, D.C., for the appellee.

Before KASOLD, *Chief Judge*, and HAGEL and LANCE, *Judges*.

KASOLD, *Chief Judge*:  Mrs. Michele D. Burden is the surviving spouse of Vietnam veteran Louis E. Burden.  She appeals through counsel an August 11, 2009, decision of the Board of Veterans' Appeals (Board) that denied dependency and indemnity compensation (DIC) because she was not Mr. Burden's surviving spouse for at least one year prior to Mr. Burden's death.  *See* 38 U.S.C. §§ 1102, 1304, 1541(f) (establishing requirements for the receipt of surviving spouse benefits).  Mrs. Burden argues that the Board erred (1) by applying Alabama's "clear and convincing proof" requirement for establishing a common law marriage instead of giving her the "benefit of the doubt" on that material issue pursuant to 38 U.S.C. § 5107 (b)[1]; (2) in finding that she was not

---

[1]  Section 5107(b), title 38, U.S. Code, states: "Benefit of the doubt. – The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary.  When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant."

married at least one year prior to her husband's death, regardless of the standard of proof; and (3) by providing an inadequate statement of reasons or bases in support of its decision. She also argues that the Board erred in finding the duty to notify satisfied. The Secretary disputes Mrs. Burden's arguments.

For the reasons set forth below, we hold that the Board was required by law to apply Alabama's "clear and convincing proof" requirement instead of giving her the "benefit of the doubt" pursuant to 38 U.S.C. § 5107(b) when assessing whether Mr. and Mrs. Burden entered into a common law marriage under Alabama law, and we further find that Mrs. Burden fails to demonstrate that the Board otherwise erred in denying her DIC. Accordingly, the Board's decision will be affirmed.

## I. BACKGROUND

Mr. Burden had active service from January 21, 1948, to October 31, 1968. He married Mrs. Burden in a ceremonial marriage on April 27, 2004, two months before his death. On August 24, 2004, Mrs. Burden applied for DIC as Mr. Burden's surviving spouse; that claim was denied on October 1, 2004, by the Mobile, Alabama, regional office (RO). The RO determined that Mrs. Burden was not entitled to benefits because she was not married to Mr. Burden for at least one year prior to his death, as required by statute and VA regulation. *See* 38 U.S.C. § 1102 (denying DIC to a surviving spouse unless, inter alia, the surviving spouse was married to a veteran for one year or more at the time of the veteran's death); 38 C.F.R. § 3.54 (2011) (same). In response to the RO's determination, Mrs. Burden submitted a "Statement of Marital Relationship" and supporting lay statements to the effect that she and Mr. Burden had a common law marriage for over five years prior to his death. The RO continued its denial of her claim, finding that under Alabama law a common law marriage did not exist between Mr. and Mrs. Burden prior to their ceremonial marriage. The Board affirmed.

The Board determinated that Mr. and Mrs. Burden were residents of Alabama during the entire period that Mrs. Burden asserted she and her husband had entered into a common law marriage. Accordingly, the Board looked to Alabama law to determine whether the Burdens had entered into a common law marriage. 38 U.S.C. § 103(c) (requiring validity of marriage to be

2

determined according to State law).[2]  The Board noted that under Alabama law, a party attempting to demonstrate a common law marriage has to establish four elements: "(1) [C]apacity (both spouses must be at least 14 and mentally competent), (2) a present agreement or mutual consent to enter into the marriage relationship, (3) a public recognition of the existence of the marriage, and (4) cohabitiation or mutual assumption openly of marital duties and obligations."  R. at 8 (citing *Creel v. Creel,* 763 So. 2d 943, 946 (Ala. 2000); *Adams v. Boan*, 559 So. 2d 1084, 1086 (Ala. 1990)).  The Board further noted that under Alabama law "clear and convincing proof" is required to establish a common law marriage.  R. at 8 (citing *Goodman v. McMillan*, 61 So.2d 55, 59 (Ala. 1952)).  The Board ultimately concluded that the evidence did not establish by "clear and convincing proof" that Mr. and Mrs. Burden were married under the common law of Alabama, and therefore the Board found that Mrs. Burden was not entitled to DIC.

## II.  THE PARTIES' ARGUMENTS

Mrs. Burden argues that the Board erred in applying the Alabama "clear and convincing proof" requirement for establishing a common law marriage when it determined that she and Mr. Burden were not married under the common law of Alabama.  In support of this argument, she contends that when weighing the facts with regard to this material issue the Board should have applied the "benefit of the doubt" standard of proof provided in 38 U.S.C. § 5107(b).  In essence, she argues that the Federal evidence standard trumps the State standard, and further argues that holding otherwise makes section 5107(b) obsolete.

In response to questioning by the Court, Mrs. Burden essentially argued that while 38 U.S.C. § 103(c) instructs the Secretary and the Board to look to State law to determine whether there is a common law marriage, this directive applies only to the State substantive law and not to State procedural law, which is similar, as the Court noted, to the application of State law in diversity cases

---

[2]  38 U.S.C. § 103 (c) states: "In determining whether or not a person is or was the spouse of a veteran, their marriage shall be proven as valid for the purposes of all laws administered by the Secretary according to the law of the place where the parties resided at the time of the marriage or the law of the place where the right to benefits accrued."  Although not an issue in this case, there is one exception: 38 U.S.C. § 101 (3) provides a Federal definition of "surviving spouse" for purposes of title 38 as, inter alia, "a person of the opposite sex who was a spouse of the veteran at the time of the veteran's death." *See also* 38 U.S.C. § 101 (31) (2011) (defining "spouse" as "a person of the opposite sex who is a wife or husband"); 38 C.F.R. § 3.50 (b) (same).

under the *Erie* doctrine.  *See* Section III.A.2.a, infra (explaining the *Erie* doctrine).  More specifically, she contends that under Alabama law the four elements necessary to prove a valid common law marriage constitute the substantive State law, but the requirement that the four elements be demonstrated by "clear and convincing proof" is a procedural rule and therefore not for application within the context of VA-benefits law.  Mrs. Burden notes that the "benefit of the doubt" doctrine is the touchstone of veterans law and that the U.S. Supreme Court explicitly stated that unlike the law at issue in traditional civil ligation, all VA regulations should be interpreted in the claimant's favor.  Moreover, she also contends that applying the State standard of proof to the determination of marriage, as argued by the Secretary, would result in making a claimant's eligibility to qualify as a surviving spouse and obtain death benefits contingent upon the state where they were married or where they lived at the time of the veteran's death.

As noted earlier, Mrs. Burden also argues that regardless of the standard of proof applied, the Board erred in its finding – and provided an inadequate statement of reasons or bases in support of its finding – that she and Mr. Burden were not married by common law for at least one year before Mr. Burden's death.  She also argues that the Board failed to ensure she was provided adequate notice how to substantiate her common law marriage claim, in particular, how to substantiate her status as a surviving spouse.

In contrast, the Secretary argues in regard to Alabama's "clear and convincing proof" requirement, that section 103(c) is unambiguous in its instruction that he should look to the state law to determine whether a valid marriage existed.  He characterizes section 103(c) as an exception to the "benefit of the doubt" doctrine that typically is applied in veterans law cases.  *Compare* 38 U.S.C. § 103(c) *and* 38 C.F.R. § 3.1(j) (2011), *with* 38 U.S.C. § 5107(b).  In response to questioning at oral argument, the Secretary argued that under the framework of the *Erie* doctrine, Alabama's "clear and convincing proof" requirement should be applied to VA determinations of common law marriage because it is a substantive part of Alabama law.  *See* Section III.A.2.a, *infra* (explaining the *Erie* doctrine).

The Secretary also noted that in enacting section 103(c), Congress clearly recognized that the qualifications of marriage differ from one State to another and implicitly rejected the concept that marriage under veterans benefits law should be held to an uniform national standard.  He argues that

Congress was concerned with uniformity within a State, rather than across State lines, when it enacted section 103(c). Moreover, the Secretary noted that applying the "benefit of the doubt" doctrine to the legal elements of Alabama common law marriage would result in VA recognizing invalid marriages that are not recognized by the State or anywhere outside the veterans benefits context, which is inconsistent with the purposes behind section 103(c). The Secretary further notes that marriage alone is insufficient to entitle a person to VA benefits, and that the "benefit of the doubt" doctrine would apply to the other material issues, such as whether a marriage existed for at least one year, or before the expiration of 15 years after termination of the veteran's service that caused his death, or whether there was a child born of or before the marriage. *See, e.g.*, 38 U.S.C. §§ 1102(a), 1304, 1541(f).

In response to Mrs. Burden's notice argument, the Secretary notes that Mrs. Burden submitted her marriage certificate and her husband's death certificate with her original claim for DIC. Because this is the evidence necessary to substantiate a claim, he argues that no further notice was required. Additionally, the Secretary argues that even if Mrs. Burden was not provided adequate notice how to substantiate her claim, her submission of evidence in support of a common law marriage demonstrated actual knowledge of the need to prove her marital status in order to qualify for DIC.

## III. DISCUSSION

### A. Alabama's "clear and convincing proof" requirement applies to VA determinations of marital status.

#### 1. For VA benefits purposes, marriage generally is defined by state law.

To establish a marriage for VA benefits purposes, the Secretary is required to look to the law of the place where the marriage took place or where the parties resided at the time the right to VA benefits accrued. 38 U.S.C. § 103(c); *Hopkins v. Nicholson*, 19 Vet.App. 165, 169 (2005). At the outset we note that to the extent Mrs. Burden argues that this requirement is an invalid exercise of Federal authority over the award of VA benefits because it fosters forum shopping and a lack of uniformity between States for the purpose of determining whether parties have entered into a valid marriage, she fails to support any such an argument with legal authority. Moreover, marriage traditionally has been a state-sanctioned and state-recognized status to which the Federal

Government attaches consequences.  *See Kahn v. I.N.S.*, 36 F.3d 1412 (9th Cir. 1994) ("Marital status, as defined by state law, plays a particularly prominent role in the administration of federal law."); *see also* 8 U.S.C. §§ 1151(b), 1186a(d)(1)(A) (marital status, under State law, is applied in determining the validity of a marriage between an alien and U.S. citizen under immigration law); *Califano v. Jobst*, 434 U.S. 47, 52-53 n.8 (1997) (Social Security benefits often hinge on marital status, under State law);  FED. R. EVID. 501 (marital status – including whether a State recognizes common law marriage – determines who may claim the marital privileges under the Federal Rules of Evidence).  Thus, in the absence of supporting argument, we find no basis for holding that section 103(c) is an improper exercise of congressional authority over VA benefits simply because it directs the Secretary to apply State law within a Federal system.  *See Coker v. Nicholson*, 19 Vet.App. 439, 442 (2006) (noting requirement that appellants plead allegations of error with some particularity "so that the Court is able to review and assess the validity of the appellant's arguments").

### 2.  *Reconciling Sections 103(c) and 5107(b)*

Although section 103(c) is clear in its mandate that marriage generally is governed by local law, it provides no specific guidance with regard to its interplay with the section 5107(b) that requires the Secretary to apply the "benefit of the doubt" to all issues material to a determination with regard to VA benefits.  Nevertheless, the simple answer is that the more specific statute governs, consistent with the cannons of interpretation.  *See United States v. Estate of Romani*, 523 U.S. 517 (1998) (holding that a later, more specific statute trumps an earlier, more general one); *Beverly v. Nicholson*, 19 Vet.App. 394, 402 (2005) (acknowledging that general "cannon of interpretation that the more specific trumps the general").  Here, section 103(c) is specific in its application to marriage, stating that State law is determinative of marriage, while section 5107(b) is general in its overarching mandate that the "benefit of the doubt" applies to all material issues in deciding VA benefits claims.  Moreover,  section 103(c) explicitly provides that "in determining whether or not a person is or was the spouse of a veteran, their marriage *shall be proven . . . according to the law of the place where the parties resided at the time of the marriage*."  38 U.S.C. § 103(c) (emphasis added).  By using the phrase "shall be proven . . . according to the law of the place where the parties resided," Congress specifically addressed the standard of proof that must be applied by the Secretary.  Thus, under the rules of statutory interpretation, section 103(c) provides that the Secretary apply Alabama's

6

requirement that a marriage be shown by "clear and convincing proof" and thus section 103(c) trumps the "benefit of the doubt" standard generally applicable in the processing of a claim for veterans benefits.

Recognizing that the easy answer is not always the correct answer, we also find support for our conclusion from an application of the principles underlying the *Erie* doctrine, which we find instructive when assessing the substantive provisions of Alabama's law governing marriages. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

### a. The *Erie* Doctrine – Substantive Versus Procedural Law

The *Erie* doctrine addresses when Federal courts should apply Federal or State law in diversity cases, and holds generally that they should apply State substantive law and Federal procedural law. *Id.* Although, as argued by Mrs. Burden at oral argument, some courts have held that the standard of proof is a procedural issue, the U.S. Supreme Court has found that the standard of proof may be a substantive issue in certain contexts. *See Gasperini v. Center for Humanities, Inc.*, 116 S. Ct. 2211, 2214 (1996). Acknowledging that this is a challenging distinction, the Supreme Court has expounded upon the *Erie* doctrine to aid Federal courts in determining whether a law is substantive or procedural. *Guaranty Trust Co. v. York*, 326 U.S. 99 (1945). In *Guaranty Trust Co.*, the Supreme Court propounded the "outcome-determination test," which asks whether "it significantly affect[s] the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?" *Id.* at 109. Subsequently, in *Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, the Supreme Court noted that when countervailing Federal and State laws are at issue, it is important to weigh the following considerations: (1) whether the State law is bound up with State-created rights and obligations, (2) whether there are countervailing considerations that would warrant a Federal rule, and (3) the effect of the rule in question on an outcome, so as to balance situations presenting countervailing Federal interests. 356 U.S. 525, 535-40 (1958). And, in *Hanna v. Plumer*, the Supreme Court later emphasized that the outcome-determinative test must not be sweepingly applied, but should be assessed in the context of the "twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." 380 U.S. 460, 468 (1965).

Applying these principles below, we conclude that the Alabama "clear and convincing proof"

7

requirement to establish a common law marriage is substantive in nature.

### i. The "Outcome-Determination Test"

Whether or not Mr. and Mrs. Burden were married for a least one year prior to his death for DIC purposes depends on the evidence standard applied to the question. Under the "benefit of the doubt" doctrine, the evidence of a common law marriage need only be in equipoise to support a finding of marriage. *Gilbert v. Derwinski*, 1 Vet.App. 49, 54 (1990) ("[A] veteran need only demonstrate that there is an 'approximate balance of positive and negative evidence' in order to prevail . . . . In other words, . . . the preponderance of the evidence must be against the claim for benefits to be denied."). In contrast, under Alabama's "clear and convincing proof" requirement, the evidence of a common law marriage must be greater than the preponderance of the evidence, although "less than beyond a reasonable doubt." *See Cochran v. Chapman* __ So. 3d __, __ No. 2100550, 2011 WL 4133010, at *4 (Ala. Civ. App. Sept. 16, 2011) (citing § 6-11-20(b)(4) ALA. CODE (1975)). Although a higher standard of proof does not necessitate a different finding on the same set of facts, it certainly can result in a different finding. *See Gilbert*, 1 Vet. App. at 54 (stating that the "benefit of the doubt" standard frequently generates an outcome different than that of the "preponderance of the evidence" standard (with the tie going to the appellant in the former and with the appellee in the latter)).

Here, the Board applied Alabama's requirement that a common law marriage must be established by "clear and convincing proof." Accordingly, because we have no finding as to whether a common law marriage might be established under the "benefit of the doubt" doctrine, for purposes of further analysis we presume that the result would have been different had the Board applied the "benefit of the doubt" standard when determining whether Mr. and Mrs. Burden were married under common law.

### ii. The *Byrd* Considerations

There is no doubt that the Alabama "clear and convincing proof" requirement is bound up with state-created rights and obligations. Indeed, Alabama courts closely scrutinize a claim of common law marriage under this heightened proof requirement because of "the serious nature of the marriage relationship." *Etheridge v. Yeager*, 465 So. 2d 378, 379 (Ala. 1985); *see also Goodman*, *supra*. On the other hand, there is no doubt that the Federal Government has been granted primary

control and responsibility over the distribution of veterans benefits and maintains a significant interest in caring for veterans and their families. *See Ribaudo v. Nicholson*, 21 Vet.App. 137, 163 (2007) (en banc) (stating that the VA motto reflects a core value of our Nation, which is "'[t]o care for him who shall have bourne the battle for his widow, and his orphan'" *(*quoting President Abraham Lincoln)); *see also Gilbert*, 1 Vet.App. at 54 ("It is in recognition of our debt to our veterans that society has through legislation taken upon itself the risk of error when, in determining whether a veteran is entitled to benefits, there is an 'approximate balance of positive and negative evidence.' By tradition and by statute, the benefit of the doubt belongs to the veteran."). And, as noted above, the application of one standard of proof over the other can be outcome determinative, fostering either the State interest or the Federal interest. Unlike typical conflicts between State and Federal interests, the conflict of State and Federal provisions here arises only as a result of two Federal statutes; specifically, section 103(c), which implicates State law, and section 5107(b), which provides an overarching Federal standard of proof. Given this basis for conflict, the fact that Congress explicitly required marital determinations for DIC to be based on State law weighs in favor of that specific interest, which is discussed further below.

### iii.  The Twin Aims of the *Erie* Doctrine

The first aim of the *Erie* Doctrine is to discourage forum shopping. Here, the very scope of section 103(c) reflects that Congress, in the face of well-established variations in State law regarding marriage, did not intend to create a nationalized standard for marriage for veterans benefits purposes. *Compare Piel v. Brown*, 361 So. 2d 90 (Ala. 1978) (Alabama common law marriage is established by (1) capacity, (2) a present agreement or mutual consent, (3) public recognition, and (4) cohabitiation or mutual assumption of marital duties), *with Johnson v. Johnson*, 235 S.C. 542 (S.C. 1960) (South Carolina common law marriage is established if the parties intended others to believe they were married), *and* 23 PA. CONS. STAT § 1103 (Pennsylvania common law marriage is established if, before 2005, the parties exchanged words indicating a present intent to be married), *and In re Marriage of Swanner-Renner*, 351 Mont. 62, 65 (2009) (In Montana "there is a rebuttable presumption that a man and woman 'deporting themselves as husband and wife have entered into a lawful contract of marriage'" (quoting MON. CODE ANN. § 26-1-602(30)).

Rather, the specificity of section 103(c) in directing the Secretary to apply State law when

determining marital status reflects congressional intent to discourage forum shopping between State and the Federal statutes and regulations that govern veterans benefits, not between individual States. With one exception regarding what constitutes a spouse and surviving spouse,[3] Congress explicitly defers to State law for determinations of marital status for VA purposes. As the Secretary noted at oral argument, if a Federal standard of proof is superimposed on the State law, there might be forum shopping between a State court and VA tribunals with regard to whether parties are married. A veteran or a surviving spouse from a common law State with a heightened evidence requirement, such as Alabama, might very well apply directly for VA benefits that are dependent on marital status, without first proving marriage under the State law. Under the "benefit of the doubt" standard, a veteran could be deemed married for VA purposes, and yet not married under State law, which would conflict with an obvious purpose behind section 103(c). Discouraging forum shopping between a State court and VA tribunal – one of the twin aims behind the *Erie* doctrine – is furthered in this instance by applying the Alabama "clear and convincing proof" requirement in determining whether Mr. and Mrs. Burden were married under the common law of Alabama.

The second aim of the *Erie* doctrine is to discourage the inequitable administration of laws. The same observations noted above are applicable here. Thus, while the equitable administration of conflicting State marriage laws is not of concern to Congress, as reflected by congressional directive to apply State law to VA marriage determinations, that same directive evinces congressional concern about the equitable administration of laws between adjudications in a particular State and VA adjudications involving residents from that same State. Thus, in this case, the equitable administration of Alabama marital law is fostered by VA application of Alabama's "clear and convincing proof" requirement that governs common law marriages in Alabama.

### b. Section 5107(b) is not rendered obsolete.

Contrary to Mrs. Burden's argument, applying Alabama's heightened proof requirement when determining whether a claimant was married under Alabama law does not render section 5107(b) obsolete. Section 103(c) applies only to the determination of the validity of a marriage under State

---

[3]The only Federal restriction with regard to VA benefits and marriage for VA purposes is that "spouse" is defined as "a person of the opposite sex who is a wife or husband," which has no bearing in this case. 38 U.S.C. § 102 (31); *see also* 38 U.S.C. § 101 (3) (defining "surviving spouse" for purposes of title 38 as, inter alia, "a person of the opposite sex who was a spouse of the veteran at the time of the veteran's death"); 38 C.F.R. § 3.50 (b) (same).

law. As the Secretary notes, once marriage has been established, the "benefit of the doubt" doctrine is applicable to the rest of the entitlement determination, which includes making determinations about the length of the marriage, when the marriage began, and whether a child was born to the marriage. *See* 38 U.S.C. §§ 1102, 1304, 1541(f). Additionally, section 5107(b) applies to the individual factual determinations that underpin the Board's ultimate assessment of whether the evidence rises to the level of "clear and convincing proof." *Cf. McLendon v. Nicholson*, 20, Vet.App. 79, 81 (2006) (noting that while the ultimate conclusion that a medical examination is not necessary is reviewed under the "arbitrary, capricious" standard of review, the Board's determinations underlying this conclusion are reviewed under various standards of review); *Bagby v. Derwinski*, 1 Vet.App. 225, 227 (1991) (noting that although factual determinations underlie a Board determination whether there is clear and unmistakable evidence to rebut the presumption of soundness, the determination that the evidence is clear and unmistakable is reviewed de novo); *see also Stringer v. Stringer*, 689 So. 2d 194 (Ala. 1997) (noting that although the ultimate determination of common law marriage must be shown by clear and convincing proof, whether the underlying elements of a common law marriage exist is a question of fact).

### c. Summary Holding

For the reasons stated above, we hold that the Board did not err in applying Alabama's "clear and convincing proof" requirement when determining whether Mr. and Mrs. Burden were common law married under Alabama common law.

### B. The Board's Application of Alabama Law

Mrs. Burden contends that regardless of the evidentiary standard applicable in her case, the Board nevertheless misapplied the holding in *Downs v. Newman,* 500 So. 2d 1062 (Ala. 1986), that some documentary evidence supporting single status does not necessarily defeat a common law marriage. In *Downs*, the Alabama Supreme Court reviewed a trial court's determination that a common law marriage existed based on the totality of the evidence, and found that the trial court was not palpably wrong in its determination simply because the evidence included some documentation indicating the parties had stated they were single. *Id*. Thus, *Downs* involved deferential review of the trial court's assessment of the totality of the evidence, and it supports Mrs. Burden's contention that some documentary evidence supporting single status does not necessarily defeat a common law

11

marriage. On the other hand, such evidence is a factor for the trier of fact to weigh, which implicates our own standard of review of findings by the Board that evidence does not attain the level of "clear and convincing proof."

The Court previously has held that the Board's application of a "clear and convincing proof" requirement involves the application of law to fact, and is reviewed under the "arbitrary and capricious" standard of review. *Caluza v. Brown*, 7 Vet.App. 498, 511 (1995). Although this *Caluza* holding involved an interpretation of the "clear and convincing proof" requirement associated with a veteran's accounts of injury while in combat pursuant to 38 U.S.C. § 1154, we see no basis to distinguish our review of the Board's finding in this case that the totality of the evidence was not "clear and convincing" that the Burdens were married under the common law of Alabama. On the other hand, it is our duty to reverse findings of fact that are demonstrated to be clearly erroneous, and determinations of marital status are factual in nature. *See* 38 U.S.C. § 7261 (scope of review); *Dedicatoria v. Brown*, 8 Vet.App. 441, 443 (1995) (marriage is a question of fact). Although the line between each standard of review can become blurred, *see Elkins v. West*, 12 Vet.App 209, 217-18 (1999) (discussing standards of review); *see also Munn v. Sec'y of DHHS*, 970 F.2d 863, 871 (Fed. Cir. 1992) (noting that the difference between the "arbitrary and capricious" standard versus the "clearly erroneous" standard "is a matter for academic debate"), the "clearly erroneous" standard applies to questions of fact such as dates of events and inconsistencies found in testimony or record documents. *Butts v. Brown,* 5 Vet.App. 532, 534 (1993) (en banc) (Court reviews findings of fact under the "clearly erroneous" standard of review); *cf. McLendon* and *Bagby*, both *supra*. As to which standard of review applies to our review of the Board's ultimate finding that a common law marriage under Alabama law has not been established, we need not decide that now as we hold that Mrs. Burden fails to demonstrate that the Board's finding that she had not established a common law marriage under Alabama law is either clearly erroneous or arbitrary and capricious. *See Elkins*, 12 Vet.App at 217-18 (discussing standards of review); *see also Munn*, 970 F.2d at 871 (noting that the difference between the "arbitrary and capricious" standard and the "clearly erroneous" standard "is a matter for academic debate"); *Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (appellant bears burden of demonstrating error on appeal).

Here, the Board did not reject a finding of common law marriage solely on the basis of a few

documents reflecting single status. To be sure, the Board found at least 16 times between December 2000 and November 2002 that Mr. Burden asserted he was not married, including an assertion in a November 2002 application for VA benefits that he was divorced and that his brother was his next of kin. Additionally, the Board found inconsistencies between Mrs. Burden's assertions that she was married under common law since 1998, and (1) her application for Social Security benefits wherein she stated she had lived with Mr. Burden since 2000, (2) Mr. Burden's statement in 1999 that he had a "girlfriend," (3) a statement from a friend that the Burdens had held themselves out as married since 1997, and (4) other friends' statements indicating varying years when the Burdens allegedly began holding themselves out as married. Based on the record on appeal, these findings are plausible and not clearly erroneous. *Gilbert*, 1 Vet.App. at 52-53 ("'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985))).

Moreover, in contrast to *Downs*, *supra*, where the appellate court noted, inter alia, the lower court's finding that the parties occasionally wore wedding bands, and one of the parties obtained life insurance where the other party was listed as the beneficiary, there is no similar finding in this case, and Mrs. Burden fails to identify any evidence in the record that might support any such similar findings. *Hilkert*, *supra*. Overall, Mrs. Burden has failed to demonstrate that the Board's application of Alabama law was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 38 U.S.C. § 7261(a)(3)(A); *Butts*, 5 Vet.App. at 538-40 (holding that the Court reviews the Board's application of law to facts under the "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard of proof), or that the Board was clearly erroneous in finding that Mr. and Mrs. Burden did not establish by "clear and convincing proof" that they were married under common law prior to their ceremonial marriage, *see Prickett v. Nicholson*, 20 Vet.App. 370 (2006) (factual determinations reviewed under the "clearly erroneous" standard of proof)*; Gilbert*, 1 Vet.App. at 52 (1990) ("'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948))); *see also Hilkert*, 12 Vet.App. at 151 (appellant bears burden of demonstrating error on appeal).

### C. The Board's statement of reasons or bases is adequate.

Mrs. Burden also argues that the Board provided an inadequate statement of reasons or bases for its failure to adequately discuss and weigh the lay evidence in support of a common law marriage as required by statute and caselaw. 38 U.S.C. § 7104(d)(a); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995) (Board's statement "must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court").

However, as noted above, the Board discussed Mrs. Burden's statements, and several lay statements submitted on her behalf, but the Board found them to be inconsistent with regard to when Mr. and Mrs. Burden may have started cohabitating or presenting themselves as husband and wife. Also as noted above, the Board's findings are not clearly erroneous. In the context of the other evidence reflecting Mr. Burden's repeated representations over time that he was not married, the Board's view, that the lay statements were inconsistent, and its finding that the evidence of common law marriage between Mr. and Mrs. Burden was not clear and convincing, is understandable and facilitative of judicial review. *Id*.

### D. Notice

Mrs. Burden contends that the Board failed to ensure that she was provided adequate notice pursuant to 38 U.S.C. § 5103(a) how to substantiate her claim, specifically, how to substantiate that she was married under the common law of Alabama. At the outset, we note that notice under section 5103(a) is general in nature, *see Vazquez-Flores v. Shinseki*, 580 F.3d 1270, 1280-81 (Fed. Cir. 2009); *see also Wilson v. Mansfield*, 506 F.3d 1055, 1062 (Fed. Cir. 2007) (stating that notice pursuant to section 5103(a) "may be generic in the sense that it need not identify evidence specific to the individual claimant's case (though it necessarily must be tailored to the specific nature of the veteran's claim)"), and requires the Secretary to address only the evidence needed that was not previously provided to the Secretary, *see Mayfield v. Nicholson*, 444 F.3d 1328, 1333 (Fed. Cir. 2006) (stating that the purpose of section 5103(a) is to require the Secretary to "provide affirmative notification to the claimant prior to the initial decision in the case as to the evidence that is needed and who shall be responsible for providing it"). Here, as the Secretary notes, Mrs. Burden submitted her marriage certificate with her claim. There was no reason for the Secretary to believe she had been married previously, and no basis to provide notice to submit evidence of a common law

14

marriage.

Moreover, the record supports the Secretary's contention that Mrs. Burden had actual knowledge of what was required to establish a common law marriage under Alabama law as evidenced by her submission of evidence and arguments during the adjudication of her claim below. *See Mlechick v. Mansfield*, 503 F.3d 1340, 1345 (Fed. Cir. 2007) (holding that lack of prejudice from inadequate notice can be demonstrated by actual knowledge of what was necessary to substantiate a claim); *see also Sanders v. Nicholson*, 487 F.3d 881, 889 (Fed. Cir. 2007) (appellant bears the burden of demonstrating prejudicial error on appeal); *Overton v. Nicholson*, 20 Vet.App. 427, 435 (2006) (no prejudice if error does not affect the essential fairness of the adjudication); *Marciniak v. Brown*, 10 Vet.App. 198, 201 (1997) (remand unnecessary in the absence of demonstrated prejudice). In sum, Mrs. Burden fails to demonstrate any prejudicial notice error. *Hilkert, supra*; *see also Shinseki v. Sanders*, 129 S. Ct. 1696, 1706 (2009) (appellant bears burden of demonstrating prejudice on appeal).

## IV. CONCLUSION

Upon consideration of the foregoing, the Board's August 11, 2009, decision is AFFIRMED.