# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-6091

AMANDA JANE WOLFE AND PETER E. BOERSCHINGER
INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED, PETITIONERS,

v.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before GREENBERG, ALLEN, and FALVEY, *Judges.*

## O R D E R

ALLEN, *Judge,* filed the opinion of the Court. FALVEY, *Judge,* filed a dissenting opinion.

Pending before us is respondent's Motion for Suspension of Secretarial Action Pending Appeal of *Wolfe v. Wilkie*, 32 Vet.App. 1 (2019), to the U.S. Court of Appeals for the Federal Circuit ("Motion"). Petitioners opposed the Motion. In addition, we requested the parties to provide supplemental briefing concerning the propriety of this Motion under our Rules of Practice and Procedure (Rules) and our jurisdiction to address the Motion given the pendency of the Federal Circuit appeal. After careful consideration, and for the reasons we will explain below, (1) we conclude we have jurisdiction to consider the Motion; (2) while the Motion is possibly not appropriate under our Rules, we have inherent authority to stay enforcement of our orders in appropriate circumstances; however (3) after considering the Motion on the merits, we will deny the Secretary the relief he seeks.

We begin by reviewing the history of this matter's proceedings, which substantially impact our analysis of the Motion. While the parties are, no doubt, intimately familiar with the course of proceedings, it is important that everyone is on the same page. We then turn to questions of jurisdiction and the propriety of the Motion under our Rules and our inherent authority. Finally, we address the parties' arguments on the merits and explain why we will deny the Motion.

## I. PROCEDURAL HISTORY

Though this action has a long history, we need not exhaustively rehash it. A few key developments set the stage for our analysis and explanation of our denial of the Motion.

After extensive pre-argument briefing, oral argument, and supplemental briefing post-argument, on September 9, 2019, the Court issued a precedential order concerning the petition. As relevant to the Motion before us, the Court's order provided as follows:[1]

---

[1] All the cited provisions of our September 2019 order appear in *Wolfe v. Wilkie*, 32 Vet.App. 1, 41 (2019).

- We certified the following class for purposes of the order: "All claimants whose claims for reimbursement of emergency medical expenses incurred at non-VA facilities VA has already denied or will deny, in whole or in part, on the ground that the expenses are part of the deductible or coinsurance payments for which the veteran was responsible."

- We invalidated 38 C.F.R. § 17.1005(a)(5) because we determined that it was contrary to 38 U.S.C. § 1725.

- We determined that the Secretary's decisions made under § 17.1005(a)(5), to the extent they denied reimbursement to class members for medical expenses deemed deductibles or coinsurance, in whole or in part, were invalid. Accordingly, we ordered the Secretary to readjudicate those reimbursement claims under section 1725's proper interpretation.

- And we directed the Secretary to cease sending letters to claimants containing incorrect information about reimbursement claims and provided that within 45 days of the date of the order the Secretary prepare and submit to the Court for approval a plan for providing notice to veterans affected by the provision of notice that contained an incorrect statement of the law concerning reimbursement of costs for non-VA emergency care.

On October 24, 2019, the Secretary described his corrective action plans. That same day, the Secretary filed opposed motions (1) for entry of judgment or, in the alternative, certification for interlocutory review; and (2) to stay the precedential effect of the Court's September 2019 order. On December 19, 2019, petitioners responded to both motions. And on January 23, 2020, we heard oral argument on both motions.

The next day, in an order that explained our reasoning,[2] we denied respondent's motion to stay the precedential effect of the September 2019 order, based on Rule 8 and the *Ribaudo*[3] factors. We held the motion for entry of judgment in abeyance, pending more briefing. And, on March 13, 2020, petitioners filed an opposed motion to enforce the September 2019 order.

In an April 6, 2020 order, we resolved both the Secretary's motion concerning entry of judgment as well as petitioners' motion to enforce.[4] With respect to the Secretary's motion, we directed that he take certain actions related to beginning the process of notifying class members concerning the readjudication process and indicated that we would enter judgment promptly after that action had been taken.[5] Accordingly, we prospectively denied his motion as moot.[6] We

---

[2] Order, *Wolfe v. Wilkie*, No. 18-6091 (Jan. 24, 2020).

[3] *Ribaudo v. Nicholson* (*Ribaudo II*), 21 Vet.App. 137, 140 (2007) (en banc) (per curiam).

[4] *See* Order, *Wolfe v. Wilkie*, No. 18-6091 (April 6, 2020).

[5] *Id*. at 4.

[6] *Id*.

granted-in-part petitioners' motion and, in relevant part, ordered the Secretary to begin readjudications as required by the September 2019 order.[7]

The Secretary complied with the April 2020 order, and the Court entered judgment on April 15, 2020. In June 2020, the Secretary filed his appeal to the Federal Circuit. That appeal remains pending and the Federal Circuit has started to receive briefing.

On January 22, 2021, respondent filed the present Motion, asking the Court to "authorize the Secretary to suspend retroactive readjudications of finally denied and unappealed *Wolfe* class claims pending the outcome of the appeal of the *Wolfe* Order to the Federal Circuit."[8] Petitioners responded to the Motion on February 12, 2021, insisting that the Secretary has not adequately defined the subset of claims for which action should be suspended, much less shown that the *Ribaudo* factors weigh in his favor.[9] For the reasons that follow, we agree with petitioners on the merits of the Motion.

While we were considering the Motion, we determined that we required additional briefing on two matters. First, while neither party raised a jurisdictional concern, "[t]he Court has an independent obligation to ensure it has jurisdiction to act."[10] So, we asked the parties to address whether we have jurisdiction to consider the Motion given the pendency of the Federal Circuit appeal. In addition, we directed the parties to address whether our Rules allow the Secretary's Motion at this point in the proceedings and, if they do not, whether we should suspend the Rules and address the merits on the Motion. As we will explain, we have jurisdiction to address the Motion. Moreover, while the Secretary's Motion is possibly inappropriate under our Rules, we conclude we have inherent authority to suspend the effect of our judgments, so we will address the Motion on its merits whether or not Rule 8's plain language authorizes such a motion.

## II. JURISDICTION AND PROPRIETY UNDER THE RULES

We begin with our jurisdiction to consider the Secretary's Motion. Up front, we acknowledge that "[t]he filing of a notice of appeal is an event of jurisdictional significance — it confers jurisdiction on the court of appeals and divests the [lower] court of its control over those aspects of the case involved in the appeal."[11]

Because the Secretary has appealed the September 9, 2019, precedential order, it might appear at first glance that we lack jurisdiction to consider the Secretary's Motion. But we do not. The Secretary asks only to suspend his own action on some claims. He in no way asks us to exercise "control over those aspects of the case involved in the appeal" currently pending at the Federal Circuit. Therefore, addressing the Secretary's Motion poses no "danger" that both we and the

---

[7] *Id.*

[8] Respondent's (Resp't's) Motion (Mot.) 3.

[9] Petitioners' (Pet'rs') Response (Resp.) 3-10.

[10] *Demery v. Wilkie*, 30 Vet.App. 430, 434 (2019); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998); *Barnett v. Brown*, 83 F.3d 1380, 1383 (Fed. Cir. 1996).

[11] *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).

Federal Circuit "would be simultaneously analyzing the same judgment," which generally is the reason why a filing of a notice of appeal functions as an event of jurisdictional significance.[12]

Rather, here, we will do no more than comport with our clear precedent that "we retain jurisdiction over the *enforcement* of our decisions even after we no longer have jurisdiction over the *merits* of a case because it has been appealed to the Federal Circuit."[13] Again, the Secretary moves to suspend his own action as to some claims, pending the Federal Circuit's decision. In other words, he seeks to pause enforcement of our prior order as to some claims. We can think of no good reason why we would lack jurisdiction over a motion to pause enforcement of a judgment if we otherwise have jurisdiction over a motion to enforce a judgment. The Secretary's Motion does not change the merits questions currently pending review before the Federal Circuit. Therefore, despite the pendency of the Federal Circuit appeal, we conclude that we have jurisdiction to address the Secretary's Motion because it concerns the enforcement, not the merits, of our prior decision.[14]

But that conclusion does not end our inquiry. The Motion must also be appropriate under our Rules or some other authority. The parties debate whether Rule 8, the vehicle the Secretary relies on to bring the Motion, authorizes the Motion. There is a serious question whether Rule 8 contemplates a motion made after an appeal has been taken to the Federal Circuit. However, we need not conclusively resolve that issue because we also conclude that we retain inherent authority to suspend the effect of our judgments in certain circumstances. So, we will consider the Motion to have been made under that authority and, to the extent Rule 8 does not allow such a motion, we will suspend that Rule.[15]

Turning first to Rule 8, it provides as follows in relevant part:

> After an appeal or petition has been filed, a party seeking a Court order to
> suspend action by the Secretary or the Board or the precedential effect of
> a decision of this Court pending its appeal shall submit for filing with the
> Clerk a motion [to that effect].[16]

As we noted, the parties dispute whether Rule 8 allows a party to file a motion *after* a party has appealed to the Federal Circuit, as here. The Secretary says yes; petitioners, no. To argue that his Motion is proper under Rule 8, the Secretary leans on *Ribaudo I*[17] and *II*, as well as *Malik v.*

---

[12] *Id.* at 58-59; *see Rudisill v. McDonough*, No. 16-4134, slip op. at 3 (Vet. App. May 7, 2021) (order granting injunction pending Federal Circuit decision) (reasoning similarly to hold that the Court had jurisdiction over a motion after a party had appealed to the Federal Circuit).

[13] *Ribaudo II*, 21 Vet.App. at 139-40 (emphasis added) (overruling "[a]ny panel opinion by this Court suggesting otherwise").

[14] *See Rudisill*, slip op. at 3-4 (reasoning similarly to hold that the Court had jurisdiction over a motion after a party had appealed to the Federal Circuit).

[15] *See* U.S. VET. APP. R. 2.

[16] U.S. VET. APP. R. 8(a).

[17] *Ribaudo v. Nicholson* (*Ribaudo I*), 20 Vet.App. 552 (2007), *abrogated on other grounds by Martin v. O'Rourke*, 891 F.3d 1338 (Fed. Cir. 2018).

*Peake*.[18] For their part, petitioners argue that Rule 8's plain text applies to the time between the filing of an appeal or petition to this Court and the filing of a notice of appeal to the Federal Circuit.

We approach Rule 8's interpretation much as we would a question of statutory interpretation. We give our Rules their plain meaning.[19] "As with a statute, our inquiry is complete if we find the text of the Rule to be clear and unambiguous."[20] We seek to give effect to all terms and to avoid rendering any "inoperative or superfluous, void or insignificant."[21] We also mind the rule of the last antecedent, which "provides that 'a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows.'"[22] However, we know that, "as with any canon of statutory interpretation, the rule of the last antecedent 'is not an absolute and can assuredly be overcome by other indicia of meaning.'"[23]

After careful consideration, we conclude that Rule 8 is unclear as to whether it allows a party to file a motion *after* a party has appealed to the Federal Circuit. Two aspects of the rule speak to appropriate timing of motions. Yet, whether we look at those aspects individually or in tandem, we fail to find a clear answer in Rule 8.

Rule 8's introductory clause, "[a]fter an appeal or petition has been filed," does not specify whether it refers to an appeal or petition filed in this Court or the Federal Circuit. Nevertheless, we think the only way to give effect to all terms in Rule 8, and to avoid rendering "pending its appeal" inoperative or superfluous, is to understand Rule 8's introductory clause to mean "filed [in this Court]." In that case, we have a starting point for filing Rule 8 motions: after an appeal or petition has been filed in this Court.

As for a possible end point, or backstop, after which a party could not file a motion under Rule 8, the only textual reference is the phrase "pending its appeal," which in context would suggest that the time to file a Rule 8 motion is before the filing of an appeal to the Federal Circuit. At minimum, under the rule of the last antecedent, "pending its appeal" qualifies "the precedential effect of a decision of this Court." So, we know at a minimum that a motion to suspend the precedential effect of a decision may only be made under Rule 8 up to the time an appeal is taken to the Federal Circuit. But "pending its appeal" may also qualify "action by the Secretary or the Board," bringing into play the motion to suspend action, because it would make perfect sense to require all Rule 8 motions to be made within the same time frame.

To interpret Rule 8 to allow motions in a particular time frame—after an appeal or petition has been filed in this Court and before an appeal to the Federal Circuit is filed—would be

---

[18] 22 Vet.App. 183 (2008) (per curiam).

[19] *See Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 540 (1991) (concerning the Federal Rules of Civil Procedure).

[20] *See id*. at 540-41.

[21] *Roper v. Nicholson*, 20 Vet.App. 173, 178 (2006) (quoting 2A Norman J. Singer, Sutherland Statutes and Statutory Construction § 46:06 (6th ed. 2000)), *aff'd,* 240 F. App'x 422 (Fed. Cir. 2007).

[22] *Lockhart v. United States*, 577 U.S. 347, 351 (2016) (quoting *Barnhart v. Thomas,* 540 U.S. 20, 26 (2003)).

[23] *Id*. at 352 (quoting *Barnhart*, 540 U.S. at 26).

consistent with *Malik*'s interpretation of Rule 8. There, an appellant who had appealed from a Board decision "filed a motion for suspension of Secretarial action, pursuant to Rule 8 of this Court's Rules of Practice and Procedure."[24] VA had terminated his accreditation, and he sought "reinstatement as an agent before VA pending disposition of the appeal."[25] In holding that we had jurisdiction to consider his motion under Rule 8, we reasoned that "Rule 8 of the Court's Rules of Practice and Procedure permits a party to seek extraordinary relief to suspend Secretarial action while the Court considers an appeal or petition *currently before it*"[26]—meaning there currently before it on the merits. Admittedly, though, the Court in *Malik* seemingly rendered its interpretation in the absence of a question such as the one we face now about motions' timing.[27]

Contrary to what the Secretary seems to argue, neither *Ribaudo I* nor *II* bears on the question of *our* Rule 8's interpretation. Neither case arose under *our* Rule 8; rather, in those cases, the Court looked to the Federal Rules of Civil Procedure, the Federal Rules of Appellate Procedure, and the Federal Circuit Rules for guidance in handling a situation that our Rules did not cover.[28]

All in all, we cannot say for sure whether Rule 8 permits the Secretary's Motion after he has filed an appeal to the Federal Circuit.[29] But, even if Rule 8 does not permit his Motion, we conclude that, under Rule 2, we can suspend Rule 8 and otherwise order proceedings as we see fit.[30] Further, we conclude that we have inherent authority to suspend the effect of our judgments.[31] So we will proceed to consider the merits of the Secretary's Motion.

### III. LEGAL STANDARD

We acknowledge that this Motion is different and narrower than respondent's prior motion to stay the precedential effect of the September 2019 order. However, the legal test that applied to the motion to stay also applies here.[32]

---

[24] *Malik*, 22 Vet.App. at 184.

[25] *Id.*

[26] *Id.* at 184-85 (emphasis added).

[27] In their supplemental briefs, the parties also discuss whether the Secretary's Motion is properly characterized as a request for a stay or an injunction. Resp't's Supplemental (Suppl.) Brief (Br.) 7-9; Pet'rs' Suppl. Br. 3. Because the parties seem to agree that stay is the proper characterization, and both parties argued the Motion's merits under the *Ribaudo* factors, Resp't's Mot. 3-10, Pet'rs' Resp. 6-10, we see no need to say more about the Motion's characterization. Either way, the result would be the same.

[28] *Ribaudo II*, 21 Vet.App. at 138-39 (citing the Federal Rules of Appellate Procedure and the Federal Circuit Rules); *Ribaudo I*, 20 Vet.App. at 559-60 (citing all three sets of rules).

[29] The Court may wish to engage in rulemaking to clarify the scope of Rule 8.

[30] U.S. VET. APP. R. 2.

[31] *Rudisill*, slip op. at 5; *see Monk v. Shulkin* (*Monk II*), 855 F.3d 1312, 1318 (Fed. Cir. 2017) (holding that this Court has "authority to certify and adjudicate class action cases" "under the All Writs Act, other statutory authority, and the Veterans Court's inherent powers"); *see also Skaar v. Wilkie*, 32 Vet.App. 156, 177-78 (2019) (citing *Monk II* for "our inherent authority . . . [and 38 U.S.C. § 7264(a) for] our ability to craft rules of practice and procedure"); *Ribaudo I*, 20 Vet.App. at 559-60 (following "universally accepted Federal practice").

[32] *See Malik*, 22 Vet.App. at 185 (holding that the *Ribaudo* factor test applies when a party seeks to suspend action under Rule 8).

In determining whether to grant such a motion, the Court looks to the "totality of the circumstances" and pays specific attention to the following factors: (1) The movant's likelihood of success on the merits of the appeal; (2) whether the movant will suffer irreparable harm in the absence of a suspension of action; (3) the impact of a suspension of action on the non-moving party; and (4) the public interest.[33] The movant bears the burden of demonstrating that a suspension of action is warranted.[34]

## IV. SUSPENSION OF SECRETARIAL ACTION IS NOT WARRANTED.

Here, the Secretary has not met his burden of demonstrating that suspension of retroactive readjudications is warranted. As we will explain, none of the *Ribaudo* factors weigh in his favor.

### A. Likelihood of Success on Appeal

From the outset, we acknowledge that it may seem paradoxical, or even presumptuous, for us to predict how the Federal Circuit will rule on an appeal in which it is already engaged. Yet that is what the Secretary calls on us to do. He argues—for the first time, might we add[35]—that, by including in the *Wolfe* class definition reimbursement claims that VA "has already denied" and by ordering VA to retroactively readjudicate "finally denied and unappealed claims," we violated the rule of finality as well as our own en banc precedent in *Skaar v. Wilkie*, 32 Vet.App. 156 (2019) (en banc), which issued after our September 2019 order.[36] We conclude that the Secretary has not shown likelihood of success on appeal, for both legal and practical reasons.

If one knew nothing more of *Skaar*'s "expired claimant" holding, or of class action-equitable tolling caselaw more generally, than what the Secretary presents in his brief,[37] then perhaps one might see a decent likelihood of success based in law. But we know better. We know that there is more to *Skaar*. We know that there is more to the caselaw. And we know that, assuming *any* class members qualify as "expired claimants,"[38] we did not break new ground in *Wolfe* such that suspension of retroactive readjudications would be warranted.[39] In fact, as we explain, the inclusion of any "expired claimants" in the *Wolfe* class is no less than a reasonable exercise of well-established discretion.[40]

---

[33] *Malik*, 22 Vet.App. at 185; *Ribaudo II*, 21 Vet.App. at 140.

[34] *Malik*, 22 Vet.App. at 185; *Ribaudo II*, 21 Vet.App. at 140; *see* U.S. VET. APP. R. 8(b)(2) (providing that a party seeking a suspension of action must provide "affidavits or other sworn statements addressing any facts in dispute").

[35] The novelty of the Secretary's argument alone hurts his chances of success on appeal. *See, e.g., Boggs v. West*, 188 F.3d 1335, 1337-38 (Fed. Cir. 1999) ("As a general rule, an appellate court will not hear on appeal issues that were not clearly raised in the proceedings below."). And, of course, the novelty means that none of this order's subsequent analysis appears in our September 2019 order. Even so, we provide it to address the Secretary's Motion head on.

[36] Resp't's Mot. 4-5.

[37] *See id.* at 5-6.

[38] *See infra*, p. 11.

[39] *See Ribaudo II*, 21 Vet.App. at 141.

[40] *See id.* ("To determine the likelihood that any ruling of law will survive appeal, the best objective test is the degree

*Skaar* applied the general rule that we do not include "expired claimants" in a class. In *Skaar*, we declined to exercise our discretion to waive the 120-day Notice of Appeal filing requirement for—and to thereby include in the class definition—"Expired Claimants," claimants who had "received final Board decisions but did not appeal them to this Court."[41] There, waiver was not warranted because the appellant never alleged extraordinary circumstances on behalf of those potential class members;[42] he "presented no reason for [the Court] to depart from *Bove* [*v. Shinseki*]'s principle that the 120-day Notice of Appeal window to this Court will only be waived 'when circumstances precluded a timely filing despite the exercise of due diligence.'"[43] As a result, we saw "no principled way to distinguish the Expired Claimants here and *any* other claimants who have been denied benefits, failed to appeal to this Court, and later discovered their benefits denial was based on an incorrect reading of the law.'"[44] We surmised, and rejected, an attempt to derive an unfair substantive legal advantage merely from the class action procedural device itself, an advantage that would not be available through a precedential decision.[45]

To further explain why the general rule applied in *Skaar*, we contrasted the circumstances in *Skaar* with those in a case that warranted exception: *Bowen v. City of New York*, 476 U.S. 467 (1986).[46] In *City of New York*, we noted, the Supreme Court upheld certification of a class of Social Security claimants that included those who had not appealed adverse benefits determinations within the relevant appeal window, i.e. Expired Claimants.[47] There, the government "had adopted an unlawful, unpublished policy under which countless deserving claimants were denied benefits."[48] And the Court concluded that equitable tolling was warranted because it "served the purpose of the [Social Security] Act where . . . 'the Government's secretive conduct prevents plaintiffs from knowing of a violation of rights.'"[49] To round out the equitable tolling discussion in *Skaar*, we also acknowledged another Supreme Court case, *Pittston Coal Group v. Sebben*, 488 U.S. 105, 123 (1988),[50] which noted that "the conditions for applying [equitable tolling] do not exist" when, unlike in *City of New York*, "[t]he agency action . . . was not taken pursuant to a secret, internal policy, but under a regulation that was published for all to see."[51]

---

to which it is rooted in well-established law.").

[41] *Skaar*, 32 Vet.App. at 186.

[42] *Id.* at 186-87. "[T]he extraordinary circumstances element [of equitable tolling] necessarily requires a case-by-case analysis and not a categorical determination." *James v. White*, 917 F.3d 1368, 1373 (Fed. Cir. 2019).

[43] *Skaar*, 32 Vet.App. at 187.

[44] *Id.* at 187-88.

[45] *Id.* at 188.

[46] *Id.* at 187.

[47] *Id.* (citing *City of New York*, 476 U.S. at 486).

[48] *City of New York*, 476 U.S. at 473.

[49] *Id.* at 481 (quoting *City of New York v. Heckler*, 742 F.2d 729, 738 (1984)).

[50] *Skaar*, 32 Vet.App. at 187.

[51] *Pittston Coal Grp.*, 488 U.S. at 123.

Since *Skaar*, and the Secretary's Motion, we have issued two more decisions that are worth mentioning here: *Bowling*[52] and *Beaudette*.[53] At least when it comes to expired claimants, *Bowling* bears a remarkable resemblance to *Skaar*; there too we would have declined to include expired claimants in the class, had we granted a class.[54] As did the *Skaar* appellant, the *Bowling* "appellants [sought] to certify a class that includes, among others, claimants with final VA denials *because* a precedential opinion would not otherwise be enforceable against them."[55] And, just as we did in *Skaar*, we rejected that attempt, this time with the benefit of *Skaar*.[56] What's more, when considering whether "class certification [was] superior to a precedential decision" in *Bowling*, we reasoned that "hypothetical noncompliance," which was all appellants alleged, "is inadequate to overcome the presumption that a precedential decision is adequate."[57] For this aspect of our decision, we compared *Bowling* to *Skaar* and contrasted it with *Wolfe*, noting in a parenthetical that in *Wolfe* we had "[held] that certifying a class was superior to a precedential decision because VA circumvented an earlier precedential decision on the same issue."[58] In other words, we recognized in *Bowling* that *Wolfe* involved extraordinary circumstances that *Bowling* did not.

Then there was *Beaudette*, where we included expired claimants in the class. The *Beaudette* "[p]etitioners maintain[ed] that VA ha[d] revoked the benefits of nearly 20,000 recipients since the Caregiver Program began and that VA ha[d] withheld judicial review for all benefits decisions under the Caregiver program."[59] So petitioners "move[d] the Court to certify a class of claimants who received an adverse decision under the Caregiver Program, exhausted available review under the VHA, and have not been afforded the right to appeal to the Board."[60] We "determined that VA wrongfully denied claimants the right to seek Board review of Caregiver Program determinations."[61] Faced with the proposed class definition, we acknowledged that petitioners "ask[ed] us to certify a class of people who have not sought Board review."[62] In deciding to include those people in the class, we noted that "any attempt by the proposed class members to obtain Board review 'would [have] amount[ed] to a useless act' and [would have been] 'futile'" because "the Secretary has stated that Caregiver Program benefits decisions are not reviewable by the Board, and of course, the Board cannot disobey the Secretary's instructions."[63] In short, extraordinary circumstances, namely how "VA affirmatively prevented [tens of thousands of]

---

[52] *Bowling v. McDonough*, No. 18-5263, 2021 WL 1249822, at *5 (Vet. App. Mar. 29, 2021).

[53] *Beaudette v. McDonough*, No. 20-4961, slip op. (Vet. App. Apr. 19, 2021).

[54] *Bowling*, 2021 WL 1249822, at *5-6.

[55] *Id.* at *5 (emphasis added).

[56] *Id.*

[57] *Id.* at *6.

[58] *Id.*

[59] *Beaudette*, slip op. at 2.

[60] *Id.*

[61] *Id.* at 7.

[62] *Id.*

[63] *Id.* (citing *Wolfe*, 32 Vet.App. at 39; 80 Fed. Reg. 1366; 38 U.S.C. § 7104(c)).

Caregiver Program claimants from exercising their appellate rights at all" via an unlawful "adjudicative blockade," warranted inclusion of expired claimants in the class.[64]

The circumstances that gave rise to *Wolfe* much more closely resemble those in *City of New York* or *Beaudette* than those in *Skaar*, *Bowling*, or even *Pittston Coal Group*. To be sure, as in *Pittston Coal Group*, the regulation at issue in *Wolfe* was published for all to see. But unlike the *Pittston Coal Group* regulation, the *Wolfe* regulation represents the *second* iteration of VA's unlawful action regarding the same statute—in spite of this Court's clear ruling on the very same issue. In our September 2019 order we recognized that extraordinary circumstances were at play: "Before *Staab*, VA wrongly interpreted and administered section 1725. . . . Then, in *Staab*, we authoritatively corrected VA's misunderstanding of section 1725. . . . After *Staab*, VA adopted a new regulation, purportedly to implement *Staab*,"[65] but that new regulation "functionally create[d] a world indistinguishable from the world Staab *authoritatively held impermissible under the statute*."[66] What's worse is, "[e]ven after we decided *Staab*, and after VA dropped its appeal of *Staab*, VA was affirmatively . . . . telling veterans that the law was exactly opposite to what a Federal court had held the law to be."[67] What we observed in September 2019 still holds true: "Who knows how many veterans relied on such a misrepresentation—for that is what it was—in deciding not to appeal VA decisions that denied reimbursement for non-VA emergency medical care."[68] In short, VA acted unlawfully, and misled veterans, in blatant disregard of a squarely on-point, precedential court decision.

Those extraordinary circumstances make *Wolfe* the exception, on par with *City of New York* or *Beaudette*, not the rule.[69] In all three cases, agency misinformation either prevented any "expired claimants" from realizing that they had potentially meritorious claims before their appeal windows closed (i.e., *Wolfe* and *City of New York*), or barred them from seeking further agency review at all (i.e., *Beaudette*). Accounting for agency misinformation strikes us as a principled way to distinguish the Expired Claimants here from the typical claimants.[70] We have no doubt that, in *Wolfe*, extraordinary circumstances precluded any expired claimants' timely filing of reimbursement claims despite the exercise of due diligence.[71] Therefore, here, as in *City of New York* and *Beaudette*, an exception to the general principles of finality and exclusion of expired claimants from a class was warranted.

---

[64] *Id.* at 9.

[65] *Wolfe*, 32 Vet.App. at 11.

[66] *Id.*

[67] *Id.* at 12.

[68] *Id.*

[69] *See Ribaudo II*, 21 Vet.App. at 141 ("Where the decision of a court takes only a small incremental step from established law or relies on a strong analogy to clear precedent, then there is reason to believe that reversal is unlikely.").

[70] *See Skaar*, 32 Vet.App. at 187-88.

[71] *Id.*

On a more practical note, as petitioners point out,[72] the Secretary assumes not only that the class actually includes "expired claimants," but also that their identity is self-evident and fixed. We are not so sure—at least the Secretary failed to provide enough information in his Motion to assure us that the facts bear out his assumptions. As far as we can tell, any potential *Wolfe* class member's appeal window would have started, at the earliest, on January 9, 2018, when the challenged regulation became effective. And because petitioners filed their petition and sought class certification (of the class we later certified) on October 30, 2018, petitioners may have tolled the one-year appeal window for all potential class members who had not yet filed an NOD or subsequent appeal.[73] We need not decide today the applicability of the general rule under *American Pipe* in district courts to administrative deadlines in the VA system. There is no call for us make that determination. But if a rule similar to that in *American Pipe* applies here, for any potential class members who were waiting on a subsequent VA decision, their claims never became final. Again, we do not decide that *American Pipe* and its tolling rule apply to proceedings before this Court. But the fact that this question is uncertain underscores that the Secretary has not met his burden of showing that a suspension of our order is appropriate. In sum, we fail to see a potential subset of *Wolfe* class members who, in fact, would qualify as "expired claimants." In conclusion, the Secretary shows a likelihood of success neither in theory nor in fact.

## B. Other Factors

None of the other three factors weigh in the Secretary's favor. The Secretary has not shown that, before the Federal Circuit decides his pending appeal of the September 2019 order, he will suffer irreparable harm in the absence of a suspension of retroactive readjudications of finally denied and unappealed *Wolfe* class claims. To be sure, he alleges harms, such as lost time and administrative disruption, that could in theory constitute irreparable harm.[74] But the Secretary still leaves the Court wondering whether *any* "finally denied and unappealed *Wolfe* class claims" exist in fact to cause the Secretary irreparable harm.[75] Certainly, the Secretary's Motion is premised on the existence of not just some but many such claims. Yet the Court sees no attempt at estimating, much less showing, how many claims remain to be readjudicated. The closest the Secretary comes to informing the Court of the scope of the potential harm at issue is to say that he has spent "countless"—or "hundreds upon hundreds of"—person hours adjudicating those claims *in the past*.[76] But he has not attempted to support any past or future alleged harm with data; the Fromm declaration is no better than an assurance that finally denied and unappealed *Wolfe* class claims exist and will cause irreparable harm "because I say so." Such an assurance does not meet the

---

[72] Pet'rs' Resp. 3-5.

[73] *See Bright v. United States*, 603 F.3d 1273, 1274 (Fed. Cir. 2010) (holding that, upon single plaintiff's filing of suit and seeking class certification in an Article I court, a statutory limitations period was tolled for putative class members); *see also Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554-55 (1974); *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350-54 (1983) (concluding that *American Pipe*'s holding applied broadly to all asserted members of the class, not just intervenors, and holding that "'the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action'").

[74] *See Ribaudo II*, 21 Vet.App. at 142-43.

[75] *See supra*, p. 11.

[76] Resp't's Mot. 7.

Secretary's burden. Finally, we note that the remaining time during which the Secretary could incur more alleged harm is the period until the Federal Circuit decides his *Wolfe* appeal. In other words, not long. All in all, we fail to see the irreparable harm that the Secretary alleges.

As for the impact of suspension on petitioners, once again[77] the Secretary has failed to meaningfully engage in this analysis, much less to provide evidence on the matter. He speaks only in generalities, which do not inform a proper weighing of this factor.

Turning to the last factor, the Secretary does not show that the public interest supports granting a suspension. Although we acknowledge that not granting his Motion will require the devotion of resources and tax an otherwise burdened veterans benefits system, this concern would be present with any Court decision interpreting a benefits statute. And we underscore yet again that we are not talking about an indefinite time during which VA will labor under our decision. Either the Federal Circuit will affirm our judgment, in which case there is no harm because VA will have been complying with the law, or it will reverse and, thereby, stop any harm. But in either case, the time between today and when we know what the Federal Circuit will do is likely relatively short.

Finally, we note that the Secretary has not accompanied his Motion with evidence that supports his assertions and, crucially, has not submitted evidence or argument specific to the period that the Secretary wishes to stay. Given Rule 8(b)(2)'s specific requirement that a party seeking a suspension of action must provide "affidavits or other sworn statements addressing any facts in dispute,"[78] the Secretary's failure to support his contentions with specifics and data weighs against his Motion.[79] And the same would be true even if we consider the Motion under our inherent authority. Evidence is not a luxury; it is a necessity.

Considering the totality of the circumstances, the Secretary has not met his burden of demonstrating that we should allow him to suspend readjudications.

Upon consideration of the foregoing, it is

ORDERED that, pursuant to Rule 2 of our Rules of Practice and Procedure, Rule 8 is suspended. And it is further

ORDERED that respondent's January 22, 2021, motion to suspend secretarial action is denied.

DATED: May 13, 2021

---

[77] *See* Order 2, *Wolfe v. Wilkie*, No. 18-6091 (Jan. 24, 2020).

[78] U.S. VET. APP. R. 8(b)(2).

[79] *See Vazquez-Flores v. Peake*, 22 Vet.App. 91, 94-95 (2008) (denying Secretary's motion to stay the precedential effect of a Court decision where the Secretary "present[ed] no evidence beyond his speculative assertions" of irreparable harm).

FALVEY, *Judge*, dissenting: I respectfully dissent because I would grant the Secretary's motion to suspend readjudication of finally denied and unappealed claims. These are claims of people who have received a final Board decision and chose not to appeal. These claims are now final. Even if the Federal Circuit upholds our 2019 *Wolfe* order on appeal,[80] which I think is unlikely, these claimants would not benefit because "[n]ew legal principles, even when applied retroactively, do not apply to cases already closed."[81] And neither our mandamus power nor our authority to aggregate claims in a class action allows us to provide claimants with relief not authorized by law or to expand our appellate jurisdiction to those who have not appealed final Board decisions. Thus, I would permit the Secretary to pause outlays of taxpayer money and the efforts of an overburdened system while the Federal Circuit reviews this case.

In *Skaar v. Wilkie*,[82] we specifically declined to include in the class "those whose claims have been denied and relevant appeal windows of those denials have expired."[83] We explained that those claimants did not appeal their final Board decisions, despite having had ample opportunity to do so, and "[w]e will not now excuse the Expired Claimants' lack of diligence in pursuing their claims, depart from precedent, and grant retrospective relief merely because this is a class action."[84] *Skaar* is precedential and binding, and we have followed it in our later cases.[85] Thus, I see no support in the law for the majority's exercise of jurisdiction over a class that includes past and expired claimants.

Neither *Bowen v. City of New York*[86] nor *Beaudette v. McDonough*[87] provides shelter for *Wolfe*. In *City of New York*, the Supreme Court "held that the application of a secret, internal policy by the Secretary of Health and Human Services in adjudicating Social Security Act claims equitably tolled the limitations periods for seeking administrative or judicial review."[88] The Supreme Court explained in *Pittston Coal*, however, that the *City of New York* rule does not apply when the "agency action . . . was not taken pursuant to a secret, internal policy, but under a regulation that was published for all to see."[89]

---

[80] *Wolfe v. Wilkie*, 32 Vet.App. 1 (2019) (panel order).

[81] *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758 (1995).

[82] *Skaar v. Wilkie*, 32 Vet.App. 156 (2019).

[83] 32 Vet.App. at 189.

[84] *Id.* at 188.

[85] Relevant here is *Bowling v. McDonough*, where we held that "'expired' or 'past' claimants cannot be part of the proposed class." No. 18-5263, 2021 WL 1249822, at *5 (Vet. App. Mar. 29, 2021) (quoting *Skaar*, 32 Vet.App. at 187). Citing *Skaar*, we explained that "[b]ecause a precedential decision would have substantially the same effect, the Court is not persuaded that certification of a class is necessary or superior in this matter." *Bowling*, 2021 WL 1249822, at *6. *See also Ward v. Wilkie*, 31 Vet.App. 233, 235 (2019) (the Court denied class certification "[b]ecause this is a precedential opinion, which should have full effect throughout VA").

[86] *Bowen v. City of New York*, 476 U.S. 467 (1986).

[87] *Beaudette v. McDonough*, No. 20-4961, 2021 WL 1526226 (Vet. App. Apr. 19, 2021)

[88] *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 123 (1988) (describing *City of New York*, 476 U.S. at 478-82).

[89] *Id.* at 123.

In *Beaudette*, we invalidated the Secretary's practice of refusing to allow Board review of decisions made under 38 U.S.C. § 1720G (Caregiver Program). Rejecting the Secretary's argument that subsection 1720G(c)(1) excluded Caregiver Program decisions from judicial review, we found that the Secretary's statutory interpretation was supported by only "oblique[] referenc[e] [to] a discrete agency regulation," which was insufficiently detailed to rebut the presumption of entitlement to judicial review.[90] We explained that *Beaudette* was unlike a run-of-the-mill veterans benefits case in which the appellants had simply chosen not to appeal their benefits denials. Instead, the Secretary told claimants that their denials were not benefits decisions that they could appeal to the Board, prohibited the Board from hearing appeals from the Caregiver Program, and admitted to the Court that he would not "find and inform each past claimant of the right to appeal previous benefits decisions to the Board."[91] Given this "adjudicative blockade," and the extreme unlikelihood that appellants would, on their own, discover that they had the right to appeal, we found that an effective remedy required class certification.[92]

Thus, *City of New York* and *Beaudette* involved secretive or unclear policies that kept potential claimants from knowing their rights or ability to appeal their claims. That is unlike the published regulation that the Court invalidated in *Wolfe*. There is nothing clandestine or oblique about § 17.1005, and there is no contention that the language of that regulation hid any unauthorized VA practice or kept the claimants from either appealing or understanding that they had the right to appeal. The Court's opinion in *Staab v. McDonald*,[93] the part of 38 U.S.C. § 1725 addressed in *Staab*, and the version of 38 C.F.R. § 17.1005 that the Secretary promulgated in response to *Staab* are all published. And when the Secretary denied reimbursement under his interpretation of section 1725, he did so explicitly and while explaining that the claimant could appeal to the Board if he or she disagreed.[94] In this regard, *City of New York* and *Beaudette* are simply not on point.

Another important difference between *Wolfe* and both *City of New York* and *Beaudette* is that, in each of the latter cases, the holding was tailored to allow claimants to obtain statutorily authorized review of benefits decisions. In *City of New York*, the Supreme Court's order did not award claimants benefits but ordered that they receive "the procedure they should have been accorded in the first place."[95] Similarly, in *Beaudette*, we certified a class of "claimants who received an adverse benefits decision under the Caregiver [P]rogram, exhausted the administrative review process within the VHA, *and have not been afforded the right to appeal to the Board of Veterans' Appeals*."[96] Contrary to the majority's suggestion, there is no subset of the *Beaudette* class that includes those who have received final Board decisions and chosen not to appeal. Instead,

---

[90] *Beaudette*, 2021 WL 1526226 at *5.

[91] *Id*.

[92] *Id*.

[93] *Staab v. McDonald*, 28 Vet. App. 50, 51 (2016).

[94] Amended (Am.) Petition (Pet.) at 34-38 (Exhibit E).

[95] *City of New York*, 476 U.S. at 484.

[96] *Beaudette*, 2021 WL 1526226 at *8.

14

the Secretary's actions "affirmatively prevented Caregiver Program claimants from exercising their appellate rights at all."[97]

*Wolfe* differs. In *Wolfe*, the majority did not direct its order at obtaining a final Board decision that the petitioner could then appeal to the Court; Ms. Wolfe admitted that nothing prevented her from doing so and that she intended to "continue to pursue her direct appeal" below.[98] Instead, the *Wolfe* majority went straight to the merits and invalidated all the "Secretary's decisions made under § 17.1005(a)(5), to the extent they denied reimbursement to Wolfe Class members for medical expenses deemed deductibles or coinsurance."[99] Our decision in *Wolfe*, thus, did not help claimants obtain a Board decision that we could review on appeal. Instead, our decision obviated the need for a final Board decision, and appellate review. That is nothing like the remedy provided in *City of New York* or *Beaudette*.

Despite the majority's repeated references to extraordinary behavior by the Secretary, I see the Secretary's actions as reasonable. After we invalidated a regulation in *Staab*, the Secretary stopped denying claims under that regulation and promulgated § 17.1005(a)(5). He argues that his new regulation complies with *Staab*, and, as I said in my dissent in *Wolfe*, I think that argument is reasonable.[100] I understand that the majority disagrees with my assessment of the law, but the proper way to resolve that disagreement is through an appeal of a final Board decision. The only extraordinary behavior that I see is the majority's unprecedented decision to directly invalidate a regulation, before the matter has been properly appealed, and to order the Secretary to grant benefits for an entire class of people who have chosen not to appeal a final Board decision. Because that decision is unsupported by *City of New York*, *Beaudette*, or any other case, I think it is likely to be overturned on appeal. Thus, I would find that the first *Ribaudo II* factor has been met.[101]

I also think that the remaining *Ribaudo II* factors favor suspending secretarial action pending a decision by the Federal Circuit. Even if the Secretary can recover the improperly paid reimbursements, he will be unable to recoup the considerable expense associated with readjudicating claims, distributing reimbursement funds, and then, inevitably, clawing back those distributed funds when the case is eventually overturned on appeal.[102] And the Secretary establishes that it is not veterans but VA and insurance companies that will be affected by our decision and that the public interest supports suspending retroactive readjudication of *Wolfe* class claims. Thus, I would grant the Secretary's motion.

---

[97] *Id.*

[98] Am. Pet. at 10 n.2.

[99] *Wolfe*, 32 Vet.App. at 41.

[100] *Id.* at 45.

[101] *See Ribaudo II*, 21 Vet.App. 137, 140 (2007) (en banc) (per curiam).

[102] The majority appears to fault the Secretary for not providing exact figures for or documenting how much money and effort VA must exert to readjudicate claims of those who did not want to appeal. But I don't think the exact numbers matter. It is enough that VA and taxpayers are unlikely to see that money again and that VA must focus on those who did not want to appeal while claimants that diligently pursued their rights get to wait longer. Neither result is appropriate until the Federal Circuit decides the merits.